Wanamaker, J.,
concurring. Everyone admits that the state of Ohio needs more taxes. General High Cost of Living settled that.
Everyone admits that the other fellow shall pay more taxes.
The question is, Who is to be the “other fellow”?
This court is not now concerned with whether one group of citizens owning one kind of property shall pay one rate of taxation, and another group of citizens owning another kind of property shall pay a different rate of taxation; we are not now concerned with the question whether or not there shall be one rate on land values and another rate on personalty values; whether one kind of property shall bear the bulk of taxation for governmental purposes and another kind of property shall comparatively escape such burden; whether, in order to induce honest tax returns, certain classes of property shall be taxed only nominally, whereas other property, incapable by nature of concealment or perjured returns, shall be assessed at its full value. Necessarily, if some group of citizens shall pay less taxes, it must follow that other groups must pay more taxes, else the revenues shall be still further reduced.
Whether the anxiety among certain groups representing certain particular' interests proceeds from the desire to pay more taxes, or the desire to pay less taxes, is not' here and now important.
*192 The questions in this case are two and only two:
1. Was the classification amendment, as described in relator’s petition, legally submitted to the voters of Ohio?
2. Is said amendment in conflict with the Shinn amendment, which received the greater vote at the same election?
The questions are essentially and exclusively constitutional. In considering these questions our paramount obligation is, as required by our oath, “to support the constitution” — not some part of the constitution, but the whole constitution.
We must not permit our zeal for one provision of the constitution to impair our obligations to support all parts of the constitution, and it is, therefore, our plain duty to take that constitution by its four corners, to survey it as the political will of the people, and then to support it in whole and in part in the spirit and purpose in which it was made.
If we shall first examine the fixed, fundamental facts of this controversy, about which there is no disagreement, we shall better be able to understand the inferences of fact that may be drawn from them and the principles of law applicable to them.
The vital controversy in this case grows out of Section 2, Article XII of the Constitution, as amended in 1912, the pertinent part whereof reads as follows:
“Section 2. Laws shall be passed, taxing by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise; and also all real and personal property according *193 to its true value in money, * * * but burying grounds, public school houses, houses used exclusively for public worship, institutions used exclusively for charitable purposes, * * * may, by general laws, be exempted from taxation.”
Two groups of citizens were eager to have said Section 2 amended, one group in one way and the other group in another way.
The first group may be known as the Shinn Amendment Group, and their proposal was submitted by the joint action of the general assembly. The pertinent part of such proposal is here given as Proposal No. 1, Section 2:
“Laws shall be passed, taxing by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise, and also all real and personal property according to its true value in money, * * * but burying grounds, public school houses, houses used exclusively for public worship; institutions used exclusively for charitable „purposes, * * * may, by general laws, be exempted from taxation; and laws may BE PASSED TO PROVIDE AGAINST THE DOUBLE TAXATION THAT RESULTS FROM THE TAXATION OF BOTH THE REAL ESTATE AND THE MORTGAGE OR THE DEBT SECURED THEREBY, OR OTHER LIEN UPON IT.”
New matter appears in capital letters.
The other group may for convenience sake be known as the Classification, Amendment Group, and their amendment was submitted by initiative petition, the pertinent part reading as follows:
*194 Proposal No. 2, Section 2.
[a] “the general assembly shall provide FOR THE RAISING OF REVENUES FOR ALL STATE AND LOCAL PURPOSES IN SUCH A MANNER AS IT SHALL DEEM PROPER. [b] THE SUBJECTS OF TAXATION FOR STATE AND LOCAL PURPOSES SHALL BE CLASSIFIED, AND THE RATE OF TAXATION SHALL BE UNIFORM ON ALL SUBJECTS OF THE SAME CLASS, AND SHALL BE JUST TO THE SUBJECT TAXED; * * * but burying grounds, public school houses, houses used exclusively for public worship, [c] institutions OF PURELY PUBLIC CHARITY, * * * may, by general laws, be exempted from taxation.”
New matter appears in capitals.
Three ways are provided by the constitution for the amendment thereof:
1. Through a constitutional convention.
2. Through a joint resolution of the general assembly.
3. Through an initiative petition.
It is admitted that the classification amendment was sought to be submitted by virtue of an initiative petition.
The question, therefore, first confronting us, is whether or not such amendment was constitutionally submitted to the voters of Ohio.
When the sovereign voters gathered at their polling places on election day, or, as referred to in the argument of this cause, at the “grand assize,” those voters had the right to expect that the ballot handed to them conformed to the constitution and the laws, especially in respect to particularly ad *195 vising them as to the constitutional changes that would be made, so that they might intelligently express their judgment upon each one of the several amendments. The voters had the right to feel that there was no subterfuge — no sleepers, no jokers — hidden within the amendment, and that the title at the top of the ballot was a truthful and an honest one; that is, that it conformed to the language of the constitution and the statutes in this behalf.
Now, what are some of the legal requirements, constitutional and statutory, touching the submission of amendments, in order to fairly and fully advise the voter?
Section 5019, General Code, includes the following provision:
“When an amendment to the constitution is to be submitted to the electors for their approval or rejection, * * * each amendment shall be stated * * * in language sufficient to clearly designate it, which statement shall be printed,” etc.
What is meant by “each amendment shall be stated * * * in language sufficient to clearly designate it”?
These words are plain and pertinent and are clearly designed to advise the voter so that his vote may be intelligently and patriotically cast.
At the top of the ballot the title to this amendment appeared in the following words: “Classification of property.”
Did these three words “clearly designate” the amendment so as to advise the voter of the new *196 matter included therein and the constitutional changes resulting therefrom?
What was the new matter ? I shall divide it into three heads:
(a) “The general assembly shall provide for the raising of revenues for all state and local purposes in such manner as it shall deem proper.”
(b) “The subjects of taxation for state and local purposes shall be classified, and the rate of taxation shall be uniform on all subjects of the same class, and shall be just to the subject taxed.”
(c) “Institutions of purely public charity * * * may, by general laws, be exempted from taxation.”
Observe first that the matter designated as “(a)” is nowhere and in no wise even referred to in the title, contrary to the statute.
Observe second that the matter designated as “(b)” relates to the subjects of taxation, and not merely property, and, therefore, even this part of the amendment does not properly conform to the statute.
Observe third that the matter designated as “(c),”' “institutions of purely public charity,” which is concededly new matter, is nowhere and in no wise referred to in the title, all contrary to the statute.
Now, how can it be claimed in fairness and reason that this amendment was legally submitted, that is, that the title at the top of the ballot was, in the .language of the statute, “sufficient to clearly designate it,” so as to fairly and fully advise the *197 voter of the changes contemplated by the amendment?
If amendments may be submitted in this loose, lax way, if the requirements of constitutions and statutes may be so lightly and generally disregarded, what protection have the people as to the stability of their organic law?
The failure to make any specific or general reference to “(a)” is sought to be answered by the claim that this provision is not new matter, by reason of the provision of Section 13, Article XVIII, which so far as pertinent reads as follows:
“Laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes.”
Now, note that this Section 13 recognizes the power as existing in the municipality, but that the general assembly may “limit” that power, whereas in the classification amendment the power is absolutely withdrawn from the municipality and wholly and exclusively placed in the discretion of the general assembly; a most radical difference. The city must surrender one of the most vital powers of home rule to the general assembly of Ohio.
There is no answer to the failure to designate the change under “(c)” except that this court should disregard the change. If this court is warranted in disregarding a part of the amendment, may it not with equal reason and logic disregard the whole of the amendment? The whole amendment was petitioned for in a petition regularly signed and filed, and it is the whole amendment, the whole proposal, that is before this court for *198 consideration, and it cannot be bisected by any sort of judicial legerdemain. To do so would be to presume that the persons circulating the initiative petition, and the thousands of voters who signed such petition, each and all of them, had no intention of petitioning for the submission of the amendment as it was set forth in their petition; that they did not mean what they said; that they did not say what they meant; and that it was for this court finally and ultimately to say what the petitioners petitioned for, upon the mere suggestion of counsel, and wholly outside of the plain import of the language put into the petition.
The dangerousness of such a doctrine, the assumption of such a power by courts of last resort, would shake all the foundation of constitutional government.
Why such drastic and desperate demands are made upon this court is most apparent. If the classification amendment, as voted upon by the people, contained the language “institutions used exclusively for charitable purposes,” which it did not, then this language need not be referred to in the ballot title, because not new matter; but if the classification amendment, as voted on by the people, contained the language “institutions of purely public charity,” which it did, then it is clearly apparent that this is new matter and that the title in no wise referred to it.
The constitutional amendment of 1912 pertaining to Section 2, Article XII, deliberately and designedly extended the exemption as to “institutions of purely public charity,” as it was in the *199 Constitution of 1851, to “institutions used exclusively for charitable purposes,” in order to enlarge the exemption and give the legislature power to exempt Masonic Homes, Odd Fellow Homes, K. of P. Homes, K. of C. Homes, and all other fraternal, philanthropic, charitable homes and institutions, which, while not “purely public,” under the provisions of the Constitution of 1851, were, nevertheless, “institutions used exclusively for charitable purposes,” and which, as such, the general assembly were warranted and justified in exempting from taxation.
If the classification amendment shall stand, then these exemptions must fall.
The filing of the initiative petition on the classification amendment was jurisdictional to the submission of that amendment, and of no other amendment; the whole amendment, and not merely a part of it.
This brings us to the question as to what is meant by the word “amendment,” as used in this case and in the constitution in this behalf.
It is urged by the opposition that the word “amendment” is here us.ed in its strict, technical sense, that is, that it merely applies to the specific change to be made in the present constitution.
Now, the classification amendment, so called, if the statements and course of reasoning herein set forth are true and sound, contained three changes from the old amendment:
1. Municipal taxation.
2. Classification of property.
3. Exemption of charities.
*200 The voter under the constitution is given the right to vote on each amendment separately, and if the word “amendment” has this strict, technical meaning, as contended for by the opposition, then it must follow that an opportunity be given on the ballot to vote separately upon each one of these changes. Obviously this was not done, and if that be the true version, the amendment must fail. But I do not so understand the word “amendment” as used here. The people put it into their constitution doubtless having in mind the customary use of the word in both state and federal practice, and that use has been almost wholly in popular phrase “the proposal,” the whole proposal submitted to the states or to the voters of the states.
I maintain that this was the use made of it by the people of Ohio in Section 16, Article II, which contains this language:
“If conflicting proposed laws or conflicting proposed amendments to the constitution shall be approved at the same election by a majority of the total number of votes cast for and against the same, the one receiving the highest number of affirmative votes shall be the law, or in the case of amendments to the constitution shall be the amendment to the constitution.”
This is the simple language of the plain people and it is to receive such meaning as they usually give to it in political discussions and arguments.
The people here evidently meant that the proposed “amendment” was the whole proposal as submitted. They did not go into any technical hairsplitting distinctions as to just what particular *201 changes would be brought about upon the. existing constitution, but took the proposal as a whole, some voting for the proposal upon one ground and some on another ground, but it was the whole proposal that was either voted for or voted against. The voters so understood it and this court is not at liberty to disregard that understanding. That this construction urged by the opposition is strained, unnatural, and uncustomary in the language of the people, and even of the legal profession, appears in a most striking way from the petition filed in this case by the relator.
The third paragraph of the petition in mandamus filed in this case reads:
“At the regular election for state officials in the year 1918, there was duly submitted to the electors of the state, for their approval or rejection, a proposal duly initiated by petition, signed by more than ten per centum of said electors of said state, FOR AN AMENDMENT TO THE CONSTITUTION OF THE STATE OF OHIO.”
The very petition praying for a writ of mandamus by this court in. favor of the classification amendment declaring said classification amendment in whole as a part of the Ohio constitution, clearly admits this general customary use of the word “amendment,” that is, that it related to the whole proposal; that it related to the whole amendment as set out in the petition, and that any writ this court might issue in favor of the petitioner would necessarily apply not to the specific changes in the constitution, but to the whole amendment as petitioned for, the whole amendment as voted for.
*202 Having concluded by this course of reasoning that the classification amendment, so called, was not regularly and constitutionally submitted, it would not be necessary to consider the claims of conflict, because without them the amendment falls. However, so much attention has been given this proposition in the argument and briefs that it deserves at least passing notice.
Under the Shinn amendment it is clear that there are but two classes of property:
1. Property under mortgage.
2. All remaining property.
The general assembly may adopt one rule as to a rate as to the first class and an entirely different rule as to the rate touching the second class. But they are limited to these two classes. Under the classification amendment they are not limited to these two, but may make any number of classes that they see fit to make. How can it be said that in this respect there is no conflict ?
I have already noted the conflict as to exemptions. Under the Shinn amendment all charities, though not of a “purely public” nature, so long as they are used exclusively for “charitable purposes” may be exempted, while under the classification amendment they cannot be so exempted unless they are “purely public,” that is, open to all the public without regard to fraternal, religious or other distinctions.
One accustomed to the loose use of legal language might say that these objections are technical, but what is a technical objection? It is one *203 that goes to the form of things rather than the fact, to the style rather than the substance.
In its customary and more or less offensive sense it has been held to apply to the unimportant, inconsequential or trifling phases of any given situation. But surely that word could not be applied to a constitutional method, or a statutory method, for the submission of an amendment to the vote of the people, which in substance requires that it shall be “in language sufficient to clearly designate it.”
If it lacks that clear designation so that the voter does not understand it from the title, then it clearly does not comply with such legal requirement. Then such amendment is not legally submitted, is not legally voted upon and by no possibility can be legally adopted.
The same is likewise true upon the subject of conflict. It must be a conflict of substance or of principle, not a mere conflict of phrase, and that applies both to the classification for taxation, as above considered, and the classification as to exemptions.
It is unthinkable to hold that the voters of thq state of Ohio, who have always declared for home-rule power, should have deliberately handed over to the general assembly the power of taxation for “local purposes;” it is unthinkable that the voters of Ohio who have been promoting charitable purposes should, by voting for this amendment, burden such charitable purposes with taxes from which they had expressly exempted them in 1912.
*204 Outside of the legal questions involved in this case the state of Ohio should profit by the experience the people and courts have had in the submission of amendments to the constitution.
It is most vital that the people of Ohio should know the nature and effect of any contemplated constitutional change. They should be clearly and fully advised as to the scope and substance of such change, and it should be clearly and fully indicated on the ballot.
Let the legislature, pursuant to its powers, enact a law creating a commission, composed, say, of the governor of Ohio, the attorney general of Ohio, and the chief justice of the supreme court, to pass upon all ballot titles touching amendments and statutes that are to be referred, so that the people may vote intentionally and intelligently upon such questions.